OCTOBER AND NOVEMBER TERM, No. 29.

# Burgan *versus* Cahoon *et al.*

1. Where in an action to recover for lumber sold and delivered to a firm,
one of the defendants denied that he was a member of the firm, but there was
evidence that one of the plaintiffs called on him in the place where the firm
did business, talked to him about selling lumber, and he talked in such a way
that he should have seen that they supposed him to be a member of the firm;
that he discussed the lumber question prices; that he sent plaintiff to see one
of the firm at the place of business of the firm; that after a bargain had been
made he asked about it and approved it; that afterwards he was the party
plaintiffs went to in negotiations for the purchase of lumber; that he talked
about what he would do; that he, in conjunction with one of the partners, made
the settlements; that he acted as principal man, giving the directions and doing
the figuring, and that he wrote letters in the firm's name ordering lumber.
*Held,* that these facts were sufficient to justify the jury in finding that he held
himself out to the plaintiffs as a member of the firm, and in rendering a verdict
against him.

2. Where one of three partners assigned his interest in the firm to the wife of
another partner, and died, and afterwards the business was carried on in the same
firm name, the wife and third partner being the nominal and intended part-
ners, with the knowledge and consent of the husband, and the entire capital
was loaned by the husband, for which he took a judgment note, and the wife
took no active part or other part in the business except to sign the note, and
had no means except her interest in the firm, and the husband, with the con-
sent of the other partner, took an active part in the purchase from the plain-
tiffs of the lumber for the price of which suit was brought, and the firm being
insolvent, the husband, by entering and issuing execution on his judgment ap-
propriated the entire assets of the firm; *Held,* that the husband was liable as
a partner to the plaintiff dealing with the firm without knowledge or express
notice that he was not a partner.

3. A request to charge, which required a direction to the jury to find for the
defendant, upon the hypothesis of the facts stated, but which ignored the effect
of another class of facts, was properly qualified to that extent.

4. The name of the wife who had been originally joined as a defendant
could be stricken out of the record, by amendment, on motion of the plaintiffs,
whether her husband was liable, as a member of the firm, by reason of holding
himself out as such to the plaintiffs, or by reason of acts done by him, as her
husband, in connection with her membership.

5. For plaintiff in error to print in his paper-book his own testimony, and
omit that of the defendant in error, where the writ of error is to a judgment

[Burgan *v.* Cahoon *et al.*]

on a verdict, is in entire disregard of the rule of court, and is a practice which ought to be abandoned.

6. In such a case the Court will assume that all the evidence to which the judge who tried the cause refers in his charge, when speaking of the acts and declarations of the plaintiff in error, was actually introduced before the jury.

ERROR to the Court of Common Pleas, No. 2, of *Allegheny County.*

Assumpsit by Thomas H. Cahoon, George H. Hutchinson, and James H. Mahan, partners as Thomas H. Cahoon & Co , against R. P. Burgan, John H. Burgan, and Elizabeth Burgan, late partners as Burgan Bros., to recover the price of lumber and building materials sold and delivered to the firm of Burgan Bros.

On the trial in the Court below, before EWING, J., there was no dispute as to the sale or price of the materials, and the sole question was as to the liability of R. P. Burgan as a member of the firm.

R. P. Burgan testified, in substance, that in 1875 he, together with John H. Burgan and Daniel B. Burgan, formed a partnership, under the firm name of Burgan Bros., in the lumber business at Mansfield. There were no articles of agreement drawn up, but there was an understanding that they should go in together as partners, and should draw $40 a month each. R. P. Burgan was to furnish $6000, and was to receive $40 a month, not for his labor, but for the interest on the money he put in. On the 1st of June, 1876, he sold out to his brothers for $100 and a note for $6000, they to pay all the debts of the firm. On or about October 14th, 1877, Daniel B. Burgan died. For a year or a year and a half before his death he boarded with R. P. Burgan. He was unwell, and the wife of R. P. Burgan, Elizabeth Burgan, attended to him, kept him, and did everything that was necessary for him. Before his death he executed a written assignment, giving her his interest in the lumber-yard for her kindness to him. He signed it and placed it in the hands of John H. Burgan to be given to her if he died, and if he didn't die it was to be handed back to him or to be destroyed. She got that share. He assigned it over to her. At the time of the dissolution, June 1st, 1876, articles were drawn which each party signed. The dissolution was published in the papers, and a copy of it was sent to all the parties the firm dealt with except those notified by word of mouth. After Daniel died John H. and Elizabeth Burgan carried on the business. He, R. P. Burgan, believed that he was in the office when there was a sale effected or some lumber ordered or talked about from Cahoon.

"I had an interest in the firm. I watched the firm a little

[Burgan *v.* Cahoon *et al.*]

so I would get my money out some day. John, after Dan died, was not posted in the business thoroughly, and I assisted him all I could, and before Dan died I assisted them all I could. I promised them that when I went out that I would do all I could for them. Sometimes in the way of loaning them money, . . . . assist them in buying and selling, or making any contracts, or anything I could, or get contracts for them, and sell lumber for them any way I could, which I did do."

A letter produced from Burgan Bros. to Thomas H. Cahoon & Co. was in his handwriting. There was to be an explanation about some lumber shipped by mistake. John asked him to write it. He wrote many a letter for John, ordering goods and such like. This was the second letter. He wrote the letter, and John told him to sign it, and he signed it. He did it in good faith, believing it was all right. He wrote a letter, May 31st, 1878, ordering lumber for Burgan Bros. from Thomas H. Cahoon. He always made it a point that if he could talk up lumber any he would talk it up for his brothers, and sell lumber if he could. On this occasion he had sold a lot of lumber and come home and reported to John. He was well posted in ordering lumber, and used to order for his brother often. Mr. A. Fitzsimmons came to the office in the spring of 1878. " He asked me if I was one of the Burgan Bros., and I told him yes. I could not tell him anything else. He said he came to see me about selling me some lumber. I told him that I didn't know anything about that, that John attended to the lumber business. I suggested to Fitzsimmons that he order some plank to fill an order with." After June 1st, 1876, there was coming to him $6000, the money he loaned and the interest. They were to pay him 8 per cent. It was $50 a month first, and afterwards lowered to $40. He did not directly or indirectly get any of the proceeds of the business after June 1st, 1876. Never got a dollar of the profits, only the interest on his money and some expenses he would be at in travelling around when he would do any business for them.

Upon cross-examination he testified:

The indebtedness of the firm, June 1st, 1876, was not very much besides his own. There might have been $500, or $600, or even $1000 or $1500. He could not tell. He did not think it could have been more than $2000. Elizabeth Burgan was his wife. He never saw her over and about the lumber-yard doing business. He believed she was never there. She never did any business. She never gave any orders that he knew of. She never dictated any policy to

be pursued that he knew of. He produced a note, saying it was the note Burgan Bros. gave him on which he sold them out in 1878. He bought most of the lumber at the sale, and continued the business there. He bought stock to the amount of $3200 and entered a receipt for that amount on the note. The note was signed by John H. Burgan and Elizabeth Burgan, payable to his order. He entered it up and issued execution.

The other evidence in the case was not printed in the paper-books.

On motion of the attorney for the plaintiff, the Court allowed the record to be amended by plaintiff discontinuing as to Elizabeth Burgan, one of the defendants, and amending all the records in the case so as to show them to be against R. P. Burgan and John H. Burgan, defendants, partners of the late firm of Burgan Bros.

Counsel for the plaintiff asked the Court to charge, inter alia:

2. If the jury believe that Elizabeth Burgan, wife of R. P. Burgan, became a member of defendant's firm with his knowledge and consent, he is liable for the debts contracted by said firm during her continuance therein as a member thereof with said knowledge and consent; and your verdict should be for the plaintiff in this case.

The Court answered as follows:

This point is refused as put. It is further answered as follows: If the jury find that the previous firm of Burgan Brothers had been dissolved in the latter part of 1877 by the death of Daniel Burgan, or by his assignment of his interest in the firm to Elizabeth Burgan, wife of R. P. Burgan, and that thereafter the business was carried on in the name of Burgan Bros., John Burgan and Elizabeth Burgan being the nominal and intended partners, and this with the knowledge and consent of R. P. Burgan; and further, that the entire capital, or the principal part of the capital of said new firm, consisted of six thousand dollars, loaned by said R. P. Burgan to John Burgan and Elizabeth Burgan as partners under the firm name of Burgan Brothers, for which he took their judgment note, dated September 17th, 1880, at six months; and that Elizabeth Burgan took no other part in said business except to sign said note to her husband, or took no active part in the business, and that Elizabeth Burgan was without means except her interest in the firm; and that R. P. Burgan, with the knowledge and consent of the other partner, John Burgan, took an active part in the management of the firm business, and did take an active part in the purchase from the plaintiffs of the lumber for the price

of which the present suit is brought; and that at the time the firm was in fact insolvent, and that, having entered his judgment note, R. P. Burgan soon thereafter, by virtue of executions thereon, took and appropriated to his judgment the entire assets of the firm: these facts in law made R. P. Burgan liable as a partner to such third parties so dealing with him and with the firm, without knowledge or express notice that he was not a partner, and would not be liable for the indebtedness. If the jury find the facts to be as stated in this answer, the verdict should be for the plaintiffs as against R. P. Burgan and John Burgan.

Counsel for defendant asked the Court to charge, *inter alia :*

3. If the jury believe from the evidence in this case that the partnership of R. P. Burgan, D. B. Burgan, and John H. Burgan, doing business under the name of Burgan Bros., was dissolved, on or about June 1st, 1876, and that R. P. Burgan retired from the firm of Burgan Bros., and that Daniel B. Burgan and John H. Burgan purchased his interest by paying him the sum of $100, and also by giving him a note, dated June 17th, 1876, for $6000; and if you believe from the evidence that said R. P. Burgan did not afterwards share in the profits of the firm of Burgan Bros., then he is not liable in this action, and your verdict should be for the defendants, unless you should find there was such a holding out as a partner by said R. P. Burgan to the said plaintiffs, as induced them to believe that he shared, or participated in, or enjoyed a share of the profits of the said firm of Burgan Bros., and thereby induced them to give the credit of the amount of lumber for which this suit is brought to said Burgan Bros.

The Court answered the point as follows:

This point is refused. It is affirmed if you find the facts to be as stated in the point without other controlling circumstances, in regard to the relations of R. P. Burgan to the business in connection with his wife being the nominal partner.

In its general charge the Court said:

" R. P. Burgan makes defence that he was not a partner, and therefore is not liable in this case, and that is the question to be decided.

" There are two general grounds on which the plaintiffs claim to hold R. P. Burgan : First. They say that he was in fact and intention and in law, though not in form, a partner, namely, that by an understanding among themselves he was interested as owner in the profits and the losses of the concern. If he was he is liable. He is liable in that case

[Burgan *v.* Cahoon *et al.*]

whether the plaintiffs gave credit to him or not, whether they knew that he was a partner or not; if he was in fact such, even though concealed and intended so to be, he is liable for goods sold to the firm. Second. They say, that even granting as a matter of fact, it was not the intention between John H. Burgan and Elizabeth Burgan, or between John H. and R. P Burgan, that R. P. Burgan should have any interest in the profits or losses of the concern, still he is liable, and for this reason, a man may so act that his conduct reasonably leads parties dealing with a firm to believe that he is a member of it, and to give credit on that account. And if he has so acted—so held himself out as a partner— and has obtained credit for the firm by reason of such action, then he is liable; he is estopped from denying as to those parties who have given him credit, that he is a member of the firm. The plaintiffs say R. P. Burgan has done this. The defendants say he has not.

" The testimony going to show that he was a partner is distinguished from that going to show that he held himself out as a partner, as stated to you by counsel for the defence. A statement made to some third party that he was a partner, and that statement not communicated to the plaintiffs or their agent, is not evidence against the defendant on the question of his having held himself out to them as a partner. The evidence from which you would have to find that he had so held himself out and acted as a partner must be his acts in connection with the circumstances that were known to the plaintiffs when they gave him credit, and not only must his acts have been such as to justify a reasonable belief that he was a partner, but to hold him on that account you must further find, as a matter of fact, that they gave him credit as such; because, if they did not, his holding himself out as a partner would do them no harm. I call your attention to this because we admitted some evidence on that view of the case. It was on that solely that we allowed the plaintiff's counsel to ask Mr. Cahoon on the stand as to whom he had given credit. We allowed him to state affirmatively that he had given credit to R. P. Burgan. Now that is simply evidence of the fact that he gave credit to R. P. Burgan, and it is not evidence for you in determining whether or not the acts of the defendant were such as to reasonably lead plaintiffs to believe that he was a member of the firm.

" What the plaintiffs depend on to bind R. P. Burgan in this action are partly his words and partly his acts. The holding himself out as the member of a firm may be by words expressly stating that he was, or it may be by acts, or it

[Burgan *v.* Cahoon *et al.*]

may be by words and acts conjointly. In determining the
effect you will give to acts or words, you will take into con-
sideration the circumstances under which the parties were
acting and dealing, and their surroundings.

"The principal facts that the plaintiffs rely on in this
branch of the case—namely, that while they insist that he
was in fact and intention a partner, that, even though he
were not, he held himself out to them as such—are, that one
of the firm of the plaintiffs went to Mansfield, where Bur-
gan Bros. did business, and called on R. P. Burgan; that he
talked to him (R. P. Burgan) about selling lumber, and he
talked to him, as they claim, in such a way that he should
have seen that they supposed him to be a member of the
firm; that he (Burgan) discussed the lumber question, prices,
and so on, and sent him around to see his brother at the
place of business, where the firm name was Burgan Bros.;
that finally a bargain was made, and R. P. Burgan asked
afterwards about it, and approved it; that afterwards, at
Mansfield, in negotiations for purchase of lumber, R. P. Bur-
gan was the party that they (plaintiffs) went to; that he
talked about what 'we would do;' that he, in conjunction
with John, made the settlements; that he acted as principal
man, giving the directions, doing the figuring and the like;
that he wrote letters in the firm name of Burgan Bros., or-
dering lumber,—these and various other circumstances that
have been given as to the manner of doing business. Plain-
tiffs claim that those acts, under the circumstances, were
such as not only to lead them to reasonably believe that
Robert Burgan was a member of the firm, but that he must
have known that they were so treating him. On the other
hand, defendant's counsel argue that it is all explainable
under the circumstances; that it was not a reasonable belief
on the part of the plaintiffs, and that they ought to have
made further and more definite inquiries. Now we leave
that as a fact for you to decide.

"There is another branch of the case, though, on which we
have answered at some length the points of counsel, and which
we will now explain to you. It is in relation to the alleged
partnership of Elizabeth Burgan, and strikes us as being a
very important part of this case. The general rule of law
is this: A married woman is unable to go into business on
her own account, or to contract debts, the maxim being that
'husband and wife are one,' and that one is the husband,
and that contracts of the wife, with the knowledge and con-
sent of the husband, are the contracts of the husband him-
self.

"It has been held very properly that, where a married

[Burgan *v.* Cahoon *et al.*]

woman engages in business with the knowledge and consent of her husband, and incurs debts, in the buying of goods, for instance, he is liable for those debts. The same rule applies in the case of partnership, where the husband is active in the management of the business, and especially where the husband loans the money himself, on which the business is done. We do not think that a husband can loan money to his wife to go into business, or loan money to his wife and another person to go into business in partnership, and thus, furnishing the principal part of the capital, encourage them in going on, encourage people in dealing with him, take an active part in the business himself, conceal the fact that he is not a partner, and that his wife is the partner, or fail to make known that he is not to be responsible, and yet say he is not responsible. We think the law holds him responsible, and if it did not, it would afford a very wide door for the grossest frauds. If a man could loan money to his wife and another, or to his wife alone, or to his wife and a dozen others, take their note for it, furnish the entire capital, encourage the business, and himself aid in contracting the debts, and then, when it is unfortunate, seize the whole property, and let the other creditors go unpaid, it would be a very gross fraud, and we do not understand that the law permits anything of that sort to be done. Now, what is the testimony in this case? Take the testimony of the defendant, R. P. Burgan. It seems that he had been in the lumber business at Mansfield, and in the fall of 1876, formed a partnership with his two brothers, John H. and Daniel Burgan. He says he furnished the entire capital that was put in, as I recollect his testimony. The brother, John H., says that he put in somewhere from $100 to $200, and Daniel, he thinks, may have put in about as much, but he does not know. There were debts at the time. The business was carried on, and, though it seems the partnership was dissolved by Robert selling out Daniel's interest at sheriff's sale, he afterwards gave it back to him. They were to draw $40 a month each, the two brothers, John and Daniel, for their services, and Robert for the use of his money, Robert not doing the work, and the others doing it. After Daniel's interest was given back to him, the business appears to have been carried on in the same way. On the 1st of June, 1876, they dissolved partnership by Robert selling out to the other two brothers for a consideration of $100, and they giving him their judgment-note for $6000—the amount he had put in the firm—payable in three months. The business was then carried on by John and Daniel. They took the assets, and were to pay the debts. What the debts were over and above

[Burgan *v.* Cahoon *et al.*]

the $6000 to R. P. Burgan does not appear, further than R.
P. Burgan says it may have been $1000 or $2000, and does
not think it ran up to $3000.    What the assets were worth
we do not know.    There were book accounts amounting to
some $4000 ; whether they were good or not does not ap-
pear.    What the lumber on hand was worth is not stated.
It had been $5000 or $6000 in January before ; whether it
was more or less, or half as much, is not known.

"Probably, it would not be very far wrong, if you would
take the amount R. P. Burgan received from his brothers
as a pretty fair sale.    They thus went on, until in the fall
of 1877 Daniel was taken sick and died.    The partnership of
Burgan Brothers, as it had existed, whether Robert went
out by that alleged sale or not, was dissolved by the death
of Daniel Burgan.    If Daniel, during his sickness, assigned
his interest to Elizabeth Burgan, with the knowledge and
consent of the others, to take effect upon his death, it dis-
solved the partnership, and if they went on in business after
his death, it was a new partnership.    Now, assuming the
testimony of the defendant to be correct, and assuming the
assignment to have been made with the intention that she
should have been a partner, and not he (R. P. Burgan), a
new partnership was formed in September, or October, 1877,
the assets of that firm being those of the old firm of Daniel
& John Burgan, and its indebtedness, the indebtedness of
the old firm, and that which the new assumed and renewed.
The indebtedness to Robert Burgan is thus made the in-
debtedness of Elizabeth and John H. Burgan.    He made a
new loan to them, and took their note, each of them sign-
ing a judgment-note to R. P. Burgan, the husband of Eliza-
beth, for $6000, payable in six months.    So the new firm
was formed.    Now, what their capital was does not appear
definitely, but it does appear that their debts went unpaid,
that the property was sold out in the following October, and
the entire assets, as far as appears, were absorbed by R. P.
Burgan on his judgment-note, the creditors being left un-
paid, and that judgment-note was due, when R. P. Burgan
was ordering lumber from the plaintiffs in the name of the
firm.

"Then, whether you take the plaintiffs' testimony, or the
defendant's testimony, R. P. Burgan appears to have taken
an active interest in the management of this firm.    He ad-
vised in regard to the purchases.    He concedes he was pres-
ent in the dealing with the plaintiff in this case.    He con-
cedes that he wrote the order for one of the car-loads of
lumber yet unpaid for.    He says that he made the sale of
that lumber in the neighborhood of Cannonsburg, and wrote

[*Burgan v. Cahoon et al.*]

the order for it to be shipped. He knew all about this transaction, and about the condition of the firm, and, according to his testimony, John consulted him, with the knowledge, consent, and arrangement of his wife. [Now, if you believe his testimony in regard to what was done, and you find the other facts, it seems to me there is only the one fair conclusion. I may say here, that if Elizabeth Burgan had means to carry on this business herself, and was putting her money into it, it was the part of the defendants to show it.

"If you believe the evidence, and draw conclusions that we suggest you may draw from it, your verdict ought to be for the plaintiffs. It makes Robert P. Burgan a partner in law as to these third parties, with whom he so dealt ; and to hold anything else would be to open a very wide door to the grossest frauds. It would be difficult to get a case that would more plainly illustrate the danger and the wrong of allowing such a thing to be done, than the case on trial.]

"You will take the case, and render the verdict that you think the testimony warrants under these instructions."

Counsel for defendants excepted to the answers to the above points and to the charge.

November 24th, 1880, verdict for the plaintiffs for $644.25, upon which judgment was subsequently entered.

R. P. Burgan then took a writ of error, assigning as errors the answers to the points as above, the portion of the charge within the brackets, and that the Court erred in permitting plaintiffs to amend the record, as above, for two reasons:

1. Elizabeth Burgan admittedly was entitled to the one-half interest in the partnership.

2. If R. P. Burgan is to be held by reason of his wife having an interest, the record should contain, as defendants, the proper parties.

*Jacob H. Miller* and *Robb & Fitzsimmons* for plaintiff in error.

To what extent is a husband liable for the debt of his wife, in and about the management of a partnership, in which she is individually interested ? The object of the act of 1848 was to protect the wife's estate from being incumbered or conveyed by her husband, and not to enable her to sell, incumber, or give it away, without his consent: Haines v. Ellis, 12 H., 255 ; Pettit v. Fritz, Executor, 9 Casey, 120 ; Berger v. Clark, 29 P. F. Smith, 343.

The interest Mrs. Burgan owned was nothing more than the residue left, after the final adjustment of the business.

[Burgan *v.* Cahoon *et al.*]

She could not have bound herself to pay the debts out of her other personal estate: Mahon *v.* Gormley, 12 Harris, 82.

This was not a purchase of necessaries, where the husband could be held liable.

The learned judge laid great stress upon the fact that R. P. Burgan attended to the business. A husband may act as the agent of the wife, without becoming the owner of her property: Trieber *v.* Stover, 30 Ark., 727 ; Ferguson *v.* Spear, 65 Maine, 277 ; Moore *v.* Foote, 34 Mich., 443 ; Wells *v.* Smith, 54 Ga., 262 ; Page's Estate, 75 Penna. State, 87 ; Hitchcock *v.* Kiely, 41 Conn., 611.

It is presumed that R. P. Burgan was acting as the agent of his wife : Riegel *v.* Wooley, 32 P. F. Smith, 227 ; Wieman *v.* Anderson, 6 Wr., 311 ; Gamber *v.* Gamber, 6 Harris, 366 ; Mahon *v.* Gormley, 12 Harris, 82.

If the partnership had prospered, upon a final adjustment could the husband have seized and appropriated her interest ?

It was error to allow the amendment. If the husband is to be held liable by reason of his wife's interest, the record should show who the parties are.

*E. Edgar Galbreth* for defendants in error.

By the assignment which Daniel P. Burgan made of his interest in the firm of Burgan Brothers to Elizabeth Burgan, in consideration of " her kindness and attention towards him," said interest belonged to and became vested in her husband, it being acquired by her in consideration of her labor and services : Bucher *v.* Ream, 18 P. F. Smith, 426 ; Robinson *v.* Wallace, 3 Wr., 132 ; Hallowell *v.* Horter, 11 Casey, 379.

The opinion of the Court was delivered, November 7th, 1881, by GREEN, J.

In this case the plaintiffs claimed that the defendant, R. P. Burgan, by his acts and declarations, held himself out to them as a member of the firm of Burgan Bros., and that they were thereby induced to sell the bill of lumber in controversy, to that firm, upon this reasonable belief on their part that he was a member. In support of this allegation, testimony was given. What it was in all its details we do not know. The counsel for the plaintiff in error has printed the testimony of his own client in the appendix, but he has printed none of the testimony of the defendants in error who were the plaintiffs in this action. This is in entire disregard of the rule which requires all the testimony to be printed, where the writ of error is to a judgment on a verdict, and is a practice which ought to be abandoned. In a case like

[Burgan v. Cahoon et al.]

the present, where the questions raised by the assignments
of error depend upon the testimony delivered on the trial, it
is absolutely essential that all the testimony affecting those
questions should appear in the paper-book. We shall and
do assume that all the evidence to which the judge who tried
the cause refers in his charge when speaking of the acts and
declarations of the defendant, was actually introduced before
the jury. The charge, upon this branch of the case, was a
most careful and correct statement of the law applicable to
the subject, accompanied with cautious restrictions as to the
kind of facts which must be found in order to justify a ver-
dict for the plaintiffs. Thus the learned judge said to the
jury: " The evidence from which you would have to find
that he has so held himself out and acted as a partner, must
be his acts in connection with the circumstances that were
known to the plaintiffs when they gave him credit, and
not only must his acts have been such as to justify a reason-
able belief that he was a partner, but, to hold him on that
account you must further find as a matter of fact that they
gave him credit as such, because if they did not, his holding
himself out as a partner would do them no harm. I call
your attention to this because we admitted some evidence on
that view of the case."

The learned judge then recounts a number of facts as hav-
ing been given in evidence on this part of the case by the
plaintiffs. He says, " The principal facts that the plaintiffs
rely on in this branch of the case, namely, that while they
insist that he was in fact and intention a partner, that even.
though he were not he held himself out to them as such,
are, that one of the firm of the plaintiffs went to Mansfield,
where Burgan Bros. did business, and called on R. P. Bur-·
gan; that he talked to him (R. P. Burgan) about selling
lumber, and he talked to him, as they claim, in such a way
that he should have seen that they supposed him to be a
member of the firm; that he (Burgan) discussed the lumber
question, prices, and so on, and sent him around to see his
brother at the place of business where the firm name was
Burgan Bros. That finally a bargain was made, and R. P.
Burgan asked afterwards about it, and approved it, and
afterwards at Mansfield, in negotiations for purchase of
lumber, R. P. Burgan was the party that they (plaintiffs)
went to; that he talked about what he would do; that he,
in conjunction with John, made the settlements; that he
acted as principal man, giving the directions, doing the
figuring and the like ; that he wrote letters in the firm name
of Burgan Bros. ordering lumber—these and various other
circumstances that have been given as to the manner of doing

business. Plaintiffs claim that those acts under the circumstances were such as not only to lead them to reasonably believe that Robert Burgan was a member of the firm, but that he must have known that they were so treating him."

There is no assignment of error to this portion of the charge, nor any allegation that these facts were not given in evidence. We are, therefore, in the absence of the actual testimony, bound to presume that all the facts stated by the Court in the charge as above quoted, was proved on the trial, and if so, they were sufficient to justify the jury in finding that the defendant, R. P. Burgan, held himself out to the plaintiffs as a member of the firm and in rendering a verdict against him.

There was another aspect of the case. The plaintiffs claimed that R. P. Burgan was liable because his wife was a member of the firm, from October 11th, 1877, and during the time when the debt in suit was contracted. On that date D. B. Burgan, who was a member of the firm, but was sick and shortly after died, assigned his interest to the wife of R. P. Burgan, and from that time it appears that she and John II. Burgan were actual members of the firm. The Court was asked by the plaintiffs to charge that the mere fact of her membership with her husband's knowledge and consent would make him liable for debts contracted during her membership. This request was refused, but the Court proceeded to state that he would be liable if the jury found certain other facts enumerated in the answers, as to which considerable testimony was given. This answer is assigned for error, but it is very clear there was no error in it if the facts referred to were known, and of that the jury were to judge. Most of the testimony as to these facts came from the defendant himself.

The second assignment of error calls in question the answer of the court to the defendant's third point. The point was refused in terms, but was affirmed if the jury found the facts as stated in the point without other controlling circumstances in regard to the relations of R. P. Burgan to the business in connection with his wife being the nominal partner. The point might have been affirmed absolutely if it had not required a direction to find for the defendant upon the hypothesis of the facts stated in the point subject only to the qualification of a finding that the defendant had held himself out as a partner. This branch of the point ignored the effect of all of the other class of facts growing out of the relations of the defendant with his wife as a member of the firm. It was therefore necessary for the Court to add that qualification, and in doing so there was no error.

[Appeal of Mary Ann McAleer, Trustee.]

There was clearly no error in the matter complained of in the third assignment, because it was based upon a finding of all the other facts in the case in addition to those testified to by the defendant. In that contingency, of course, the verdict should be for the plaintiffs, and this was all the Court said.

There was no error in amending the record by striking out the name of the wife. She had been joined originally in the suit, and therefore could be stricken out, on motion of the plaintiffs. Whether her husband was liable as a member of the firm by reason of holding himself out as such to the plaintiffs, or by reason of acts done by him as her husband in connection with her membership, the amendment was equally proper.

Judgment affirmed.